[No. 2249]

## In the Matter of the Application of J. B. DIXON for a Writ of Habeas Corpus.

[161 Pac. 737]

1. COURTS—MUNICIPAL COURT—JURISDICTION—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Const., art. 6, sec. 6, gives to district courts original jurisdiction in cases involving the legality of any tax, assessment, or municipal fine, etc.; section 8 requires the legislature to determine the number of justices of the peace in each city, etc., and provides that justice's courts shall not have jurisdiction of cases conflicting with the jurisdiction of the courts of record; and section 9 requires the legislature to fix by law the jurisdiction of municipal courts. The charter of the city of Reno (art. 14, sec. 1) created a municipal court, by section 3 gave it jurisdiction as then provided for justices of the peace as to civil or criminal cases for the violation of any ordinance, and by section 6 provided that it should be treated as a justice's court, in case its proceedings should be questioned. Rev. Laws, 5721, relating to transfer of causes from justice's court, provides that the parties cannot give evidence on questions involving the legality of any tax, municipal fine, etc. An ordinance imposed a certain license upon every attorney practicing his profession in the city, payable quarterly in accordance with the gross receipts, and thereunder petitioner was convicted in the municipal court and committed. *Held*, where the issue involved the legality of a tax and the constitutionality of the ordinance imposing the tax, the municipal court had no jurisdiction, and was bound to transfer the proceedings to the district court.

2. COURTS—MUNICIPAL COURT—JURISDICTION—LEGALITY OF TAX—CERTIFICATION OF QUESTION.

In such case, where defendant challenged the legality of the tax or questioned the constitutionality of the ordinance in the municipal court, that court was ousted of jurisdiction and should have certified the pleading to the district court.

3. COURTS—MUNICIPAL COURTS—PLEADING—VERIFICATION.

No plea by a defendant in a justice's court need be verified, and such rule applies with equal force to the municipal court.

ORIGINAL PROCEEDING in *habeas corpus* by J. B. Dixon against J. D. Hillhouse, Chief of Police of the City of Reno. **Ordered** that the writ be perpetuated and the petitioner be restored to his liberty.

*J. B. Dixon* and *Frame, Humphrey & Harcomb,* for Petitioner:

The city charter and the ordinance in question violate the constitution of the United States and the constitution

of the State of Nevada, in that they take away property without due process of law, take away vested rights by *ex post facto* legislation, and deprive petitioner of his equal rights under the law. (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Ex Parte Garland*, 4 Wall. 338; *Pennoyer* v. *Neff*, 95 U. S. 714; *People* v. *Erickson*, 147 N. Y. Supp. 225; *Town* v. *Schneider*, 3 Alaska, 58; *In Re Yot Sand*, 75 Fed. 983; *Chauvin* v. *Valiton*, 8 Mont. 451; *Commonwealth* v. *Snyder*, 182 Pa. St. 630; *State* v. *Montgomery*, 94 Me. 192; *State* v. *Hoyt*, 71 Vt. 59; *Walsh* v. *Denver*, 11 Colo. App. 523; *In Re Thatcher*, 190 Fed. 969, 212 Fed. 801.)

The municipal court of the city of Reno has no jurisdiction or power to try or determine matters not of a police nature. The arrest and trial of attorneys alleged to be practicing without the prescribed license is not a matter of a police nature. The city charter, article 4, section 3, expressly reserves from the jurisdiction of the municipal court all matters not of a police nature. The words "police nature" have the same meaning and are of the same legal effect as "police power." They have a definite legal meaning and have been frequently interpreted by the courts. The provisions of subdivision 42, section 10, article 12, of the city charter, were intended by the legislature to apply only to cases of a police nature or coming within the police power of the city, and were not intended to apply where the city has no power to regulate for the public health and well-being.

The jurisdiction of the municipal court is, by the express language used in the charter, which is the act creating the said court, limited to the cognizance of matters in which a person is charged with a breach or violation of an ordinance of a police nature. The failure to comply with the requirements of the ordinance imposing a tax in the nature of a revenue measure is not of a police nature, and in no way affects the peace, health, safety, or morals of the community. The court being without jurisdiction in the first place, the exercise of jurisdiction was wrongful, and the judgment of conviction

and the commitment thereunder are null and void and of no force or effect.

Petitioner having attacked the constitutionality of the ordinance, the municipal court was without jurisdiction to proceed in the matter. "Nothing herein contained shall be construed to give such court jurisdiction to determine any such cause when it shall be made to appear by the pleadings or the verified answer that the validity of any tax, assessment or levy shall necessarily be in issue in such cause, in which case the court shall certify such cause to the district court in like manner and with the same effect as provided by law for certification of causes by justice's courts." (Reno Charter, sec. 4, art. 14.)

*L. D. Summerfield*, City Attorney, for Respondent:

There is nothing so sacredly inherent in the practice of the law as to exempt the members of that profession from the payment of a license tax imposed upon citizens engaged in any other useful occupation. (*Ex Parte Williams*, 31 Tex. Crim. 262, 20 S. W. 580, 21 L. R. A. 783.) "Such a tax is not a condition precedent to the right to practice law." (5 C. J. 571.) The imposition of the license tax is not the impairment of the obligation of contracts. (8 Cyc. 938; *Blanchard* v. *State of Florida*, 19 L. R. A. 409; Cooley on Taxation, 3d ed. vol. 2, p. 1104.)

The ordinance in question is authorized by the provisions of the charter of the city of Reno (sec. 10, art. 4). The effect is to make a license tax upon attorneys valid and constitutional. (6 C. J. 570; 4 Cyc. 898.) "Under delegated authority a municipality may impose an occupation tax upon a business or profession, although the business or profession may already have been authorized or licensed by the authority of the state." (4 Dillon, Mun. Corp., 5th ed. sec. 1408, p. 2463; *Ex Parte Counts*, 153 Pac. 93; *Ex Parte Siebenhauer*, 14 Nev. 365; *Goldthwaite* v. *City Council*, 50 Ala. 486.)

The ordinance in question does not take away the right to practice under the state license. (6 C. J. 571.) There

is no conflict with the state law, as the ordinance simply imposes an additional license in accordance with the principles heretofore sustained by the appellate court. (*Ex Parte Counts, supra; Ex Parte Siebenhauer, supra.*)

The presumption is in favor of the validity of an ordinance. (2 Dillon, Mun. Corp., sec. 646; 2 McQuillin, Mun. Corp., sec. 810.)

By the Court, MCCARRAN, J.:

This is an original proceeding in *habeas corpus.*

By the return of J. D. Hillhouse, chief of police of the city of Reno, it appears that petitioner, J. B. Dixon, was on the 5th day of June, 1916, arrested under and by virtue of a warrant of arrest issued by the municipal court of the city of Reno, Washoe County; that the warrant of arrest was issued in accordance with the prayer of a complaint filed with the municipal court of that city; that, upon petitioner's plea of not guilty to the complaint, the action proceeded to trial forthwith; and that on July 5, 1916, the petitioner was by the municipal court of the city of Reno found guilty and a commitment duly issued, under which said commitment the respondent detains petitioner and deprives him of his liberty.

The complaint, under which warrant was issued for the arrest of petitioner and upon which the trial was conducted, is in part as follows:

"That on or about the 28th day of April, A. D. 1916, in the city of Reno, county of Washoe, State of Nevada, the crime of misdemeanor was committed, to wit, by J. B. Dixon, who then and there was wilfully and unlawfully practicing, and did then and there wilfully and unlawfully practice, his profession as an attorney without having first taken out and procured the municipal license required by ordinance of the city council of the said city of Reno; all of which is contrary to the form, force, and effect, and in violation of section 21 of City Ordinance No. 82, as amended, revised, and reenacted by City Ordinance No. 195 of said city of Reno."

Petitioner filed a motion to set aside the complaint, and argued the following grounds:

" (1) That said complaint does not allege facts sufficient to constitute a public offense.

" (2) That this court has no jurisdiction or power to consider said complaint or to issue any warrant of arrest thereunder or thereupon.

" (3) That the ordinance referred to in said complaint, and sections 4, 20, and 21 thereof, are *ultra vires* and beyond the power of the city of Reno to enact.

" (4) That said ordinance and said sections are repugnant to the constitution of the United States.

" (5) That said ordinance and said sections thereof are repugnant to the constitution of the State of Nevada.

" (6) That said ordinance and said sections thereof are repugnant to the charter of the city of Reno."

The city of Reno is a duly incorporated municipality, its incorporation was founded upon special acts of the legislature of this state, and the legislature of 1915 passed an act amending certain specifically named sections of an act entitled "An act to incorporate the town of Reno, and to establish a city government therefor," approved March 16, 1903, etc. (Stats. 1915, c. 38.)

City Ordinance No. 195 is entitled "An ordinance to amend, revise, and reenact the title of, and to amend, revise, and reenact, city ordinance number 82, entitled 'An ordinance to fix, impose, and collect a license tax on certain trades, business, occupations, callings and amusements in the city of Reno; to regulate and classify the same, to fix a penalty for the violation thereof; to define the duties of certain officers in connection therewith, and to repeal all ordinances and parts of ordinances in conflict therewith,' passed and adopted October 28, 1907; and to repeal all ordinances and parts of ordinances in conflict therewith."

Section 1 of the ordinance provides:

"Every person, firm, association, or corporation engaged in carrying on, maintaining, pursuing, conducting, or transacting, or that hereafter engages in, carries on, maintains,

pursues, conducts, or transacts, in the city of Reno the trade, business, occupation, calling, or pursuit hereinafter named, shall obtain from said city and shall pay therefor the license herein specified."

Section 4 of the ordinance provides:

"Any person, firm, association, or corporation opening, conducting, maintaining, transacting, engaging in, carrying on, or pursuing any business, trade, occupation, calling, or pursuit hereinafter named without first having obtained from said city the license herein required shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than twenty-five ($25.00) dollars and not exceeding one hundred ($100.00) dollars, or by imprisonment in the city jail of said city not less than twenty-five (25) days and not exceeding one hundred (100) days, or both such fine and imprisonment."

Section 20 of the ordinance fixes a schedule for certain specified businesses, fixing the license in accordance with the quarterly gross receipts of such business.

Section 21 provides:

"Every attorney, doctor, physician, surgeon, veterinary surgeon, or dentist, practicing or following his or her profession in said city, shall pay for and obtain a quarterly license to carry on such business, as per the schedule hereinbefore recited in section 20 of this ordinance."

1. Petitioner here contends, among other things, first, that the municipal court of the city of Reno had no power or authority to try, hear, or determine the matters attempted to be adjudged by it at said hearing.

Section 6 of article 6 of the constitution of this state contains the following provision:

"The district courts in the several judicial districts of this state shall have original jurisdiction in all cases in equity; also in all cases at law which involve the title or the right of possession to, or the possesion of real property, or mining claims, or the legality of any tax, impost, assessment, toll or municipal fine, and in all other cases in which the demand (exclusive of interest) or the value of the property in controversy exceeds three hundred

dollars, also in all cases relating to the estates of deceased persons, and the persons and estates of minors and insane persons, and of the action of forcible entry and unlawful detainer; and also in all criminal cases not otherwise provided for by law; they shall also have final appellate jurisdiction in cases arising in justices' courts, and such other inferior tribunals as may be established by law. The district courts, and the judges thereof shall have power to issue writs of *mandamus*, injunction, *quo warranto, certiorari,* and all other writs proper and necessary to the complete exercise of their jurisdiction; and also shall have power to issue writs of *habeas corpus* on petition by, or on behalf of, any person held in actual custody in their respective districts."

Section 8 of article 6, among other things, provides:

"The legislature shall determine the number of justices of the peace to be elected in each city and township of the state, and shall fix by law their powers, duties, and responsibilities; *provided,* that such justices' courts shall not have jurisdiction of the following cases, viz.:   *   *   * Second, of cases wherein the title to real estate, or mining claims, or questions of boundaries to land, is or may be involved; or of cases that in any manner shall conflict with the jurisdiction of the several courts of record in this state.   *   *   *"

Section 9 of article 6 provides:

"Provision shall be made by law prescribing the powers, duties, and responsibilities of any municipal court that may be established in pursuance of section one, of this article; and also fixing by law the jurisdiction of said court, so as not to conflict with that of the several courts of record."

The municipal court of the city of Reno is created by section 1 of article 14 of the charter of the city of Reno, and by section 3 of the same article it is provided:

"The municipal court shall have the powers and jurisdiction in said city as are now provided by law for justices of the peace, wherein any person or persons are charged with the breach or violation of the provisions of

any ordinance of said city or of this charter, of a police nature; provided that the trial and proceedings in such cases shall be summary and without a jury. The said court shall have jurisdiction to hear, try and determine all cases, whether civil or criminal, for the breach or violation of any city ordinance or any provision of this charter of a police nature, and shall hear, try, determine, acquit, convict, commit, or hold to bail in accordance with the provisions of such ordinances or of this charter. The practice and proceedings in said court shall conform as nearly as practicable, to the practice and proceedings of justices' courts in similar cases.   *   *   *"

Section 6 of the charter in part provides:

"The said court shall be treated and considered as a justice's court whenever the proceedings thereof are called into question."

Section 5721, Revised Laws, having reference to the transfer of cases to the district court from the justice's court provides:

"The parties to an action in a justice's court cannot give evidence upon any question which involves the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine; nor can any issue presenting such question be tried by such court.   *   *   *"

By section 9 of article 6 of the constitution it will appear that the legislature was empowered to fix by law the jurisdiction of municipal courts, and as we read the provision it would appear that the legislature might confer upon the municipal court jurisdictional power limited to municipal purposes (*Meagher* v. *County of Storey*, 5 Nev. 249) embracing any subject, so long as it did not conflict with the several courts of record. Hence we are asked the question, in the light of our constitutional and statutory provisions, was it within the power of the municipal court, as that power had been conferred by the legislature in the provisions of the charter of the city of Reno, to pass upon and determine the questions of law involving the legality of the ordinances imposing the tax as

that question was presented by the motion to set aside the complaint.

In the case of *State ex rel. Murphy and Lutz* v. *Rising*, 10 Nev. 97, this court had under consideration this provision of the statute, as well as sections 6 and 8 of article 6 of the constitution. The court there held that the words "all cases at law" and "all criminal cases," as used in the constitution, were intended to designate distinct categories mutually exclusive, and that the legislature has full power to parcel out the jurisdiction of criminal cases between the district courts and justices' courts.

The court, in the case of *State* v. *Rising, supra*, after asserting that the words "all cases at law" and "all criminal cases" were meant to convey the idea of distinct categories mutually exclusive, said:

"If we are correct in this view, there can be no doubt that the justice's court had jurisdiction of the offense charged against Grant, and that it was his duty to try and determine it, unless it was made satisfactorily to appear to him, before or during the trial that the action could not be tried without deciding a question of title to real property, or of the right to the possession thereof; in which case, and in which case alone, it was his duty, in obedience to the statute, and without any reference to the constitution, which, as we think, has no application to criminal cases in this particular, to transfer the proceeding to the district court."

We think this same line of reasoning will apply even more so to cases arising in the justice court with reference to the right of such court to pass upon a question of law involving the legality of any tax, impost, assessment, toll, or municipal fine.

Section 9 of article 6 of the constitution provides that the legislature shall fix the jurisdiction of municipal courts so as not to conflict with that of the several courts of record.

Now the legislature of this state, in enacting the law creating the charter of the city of Reno, provided by section 3 of article 14 of that charter that:

"The municipal court shall have the powers and jurisdiction in said city as are now provided by law for justices of the peace, wherein any person or persons are charged with the breach or violation of the provisions of any ordinance of said city or of this charter, of a police nature."

And that section further provided:

"The practice and proceedings in said court shall conform as nearly as practicable, to the practice and proceedings of justices' courts in similar cases."

Moreover, it was provided in section 6 of the same article that:

"The said court shall be treated and considered as a justice's court whenever the proceedings thereof are called into question."

Here we have constitutional and statutory provisions reserving cases to the district court where the question of the legality of a tax is in issue as a matter of law. We have a statutory provision declaring that an issue presenting the question of the legality of a tax, impost, assessment, toll, or municipal fine shall not be tried in the justice court. The legislative act by which was created the charter of the city of Reno and from which act the municipal court of that city took its existence and its jurisdiction, declared that the powers and jurisdiction of that court should be the same as those now provided by law for justices of the peace in cases wherein any person is charged with the breach or violation of the provisions of an ordinance of the city. It further provided that the practice and procedure of the municipal court should conform as nearly as practicable to that of the justice court in similar cases, and that in all cases the municipal court should be treated and considered as a justice court whenever its proceedings were called into question.

Hence we might simplify matters here by inquiring as to what would be the required procedure if a charge of similar import were pending against petitioner in a justice court. If under the statute the justice of the peace was denied the right to try and determine the issue of law

raised wherein the legality of the tax was questioned, then that denial applies here with equal force to the municipal court.

In the light of the provisions as we find them in the charter of the city of Reno, we apply the reason as well as the interpretation which we find in the case of *State* v. *Rising, supra,* and in the language of Mr. Justice Beatty, as said in that case, we say there can be no doubt that the municipal court had jurisdiction of the offense charged against the petitioner, and that it was the duty of that court to try and determine it, unless it was made to appear, before or during the trial, that an issue involving the legality of a tax or the constitutionality of an ordinance imposing a tax was to be decided, in which case it was the duty of the municipal judge, in obedience to the statute, to transfer the proceedings to the district court.   (Rev. Laws, 5721.)

In the case of *State* v. *Rising, supra,* the question was as to the jurisdiction of the justice court to try a criminal case involving a charge of malicious mischief.   This court, in answer to the query as to the right of the justice court to try a case involving the right to possession of real property, there said, first of all, that the right of possession to real property was not involved in a charge of malicious mischief; that in such cases mere proof of possession is a sufficient proof.   Moreover, the court held that even proof that would support a plea of freehold in the defendant would not justify or excuse him in a case of malicious mischief.

It will not, we apprehend, be seriously disputed that the license provided for in section 21 of the ordinance, being a charge or fee for the transaction of a given business, is a tax, inasmuch as it is a charge imposed upon persons and business to raise money for municipal purposes. (*City of Santa Barbara* v. *Stearns,* 51 Cal. 499.)

**2.** Defendant was charged with a misdemeanor in having failed to pay a license tax under an ordinance imposing such tax.   Under such a charge we may inquire, has the defendant the right to challenge the legality of

the license tax so imposed? Has he the right to raise the question of the constitutionality of the ordinance imposing the license tax? If the petitioner here, being charged with a misdemeanor in having violated an ordinance imposing a license tax, sought to question the constitutionality of the ordinance or raise any other questions of law, either as to the legality of that tax or as to the ordinance, such ordinance being one imposing a tax, was it not his right to do so? Was it not, moreover, his right to raise such questions in the very first court where judgment might be rendered on his guilt or innocence and where by reason of the charge his liberty was at stake? Manifestly, petitioner was so privileged. The gravamen of the charge in this case was the failure to pay the tax. Hence the legality of the tax was a matter which might properly be raised by way of defense or plea in avoidance. We find from the record that petitioner raised these questions by his motion to set aside the complaint, which was in the nature of a demurrer to the complaint, in which the jurisdiction of the court, the legality of the tax, the constitutionality of the ordinance, were all raised as an issue of law. The question of the legality of the license tax, the question of the constitutionality of the ordinance imposing the license tax, each in turn was presented to the municipal court by the pleadings of the defendant there, petitioner here. It need scarcely be observed that, as we read the constitutional provisions and provisions found in our statute, it seems manifest that it was never intended by our lawmakers that questions such as those raised in the municipal court in this instance, which challenge the constitutionality of a tax, were to be submitted to that court. The history of the constitutional, as well as the statutory, law of this state, convinces us that questions of this character, in whatever form they might arise, were reserved to another tribunal.

3. It might be said that, in the light of the decision of this court in the case of *State* v. *Justice Court*, 29 Nev. 191, 87 Pac. 1, 89 Pac. 24, the municipal court need not

certify that case to the district court unless the pleading on the part of the defendant was verified. The answer to this is that no pleading on the part of the defendant in a justice court need be verified, and this applies with equal force to the municipal court.

It follows from the observations that we have made here that when the defendant in the police court of the city of Reno, charged with a misdemeanor in having violated a city ordinance imposing a license tax, raised a question of law as to the legality of the tax and the constitutionality of the ordinance imposing the tax, an issue of law was presented to the police court involving a question as to which, by the provisions of section 5721, Revised Laws, no evidence could be entertained; nor could any issue presenting such question be tried by that court. The municipal court, therefore, should have proceeded no further, but under the provisions of the statute should have suspended all further proceedings in the action and certified the pleadings to the district court.

The judgment rendered by the municipal court in the premises was void.

Petitioner being detained on such a judgment is entitled to be released on *habeas corpus*.

It is, therefore, ordered that the writ be perpetuated and that petitioner be restored to his liberty.